**Robert Lee PINION, Libellant,**

v.

**MISSISSIPPI SHIPPING COMPANY, Inc., Respondent.**

**No. 2990 Admiralty.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 31, 1957.

**654**

Raymond H. Kierr, Samuel C. Gains-burgh, New Orleans, La., for libellant.

Terriberry, Young, Rault & Carroll, William E. Wright, New Orleans, La., for Mississippi Shipping Co., Inc.

Bienvenu & Culver, P. A. Bienvenu, New Orleans, La., for Charles Ferran & Co., Inc.

J. SKELLY WRIGHT, District Judge.

Alleging unseaworthiness, libellant, an employee of an independent ship repair contractor, seeks to recover from the respondent ship owner for injuries sustained by him in a fall from a scaffold while repairing a salt water pipeline aboard the SS Del Mar. Respondent makes the defense of laches and, alternatively, denies unseaworthiness as well as the application of the doctrine of liability without fault as to a ship repair man. Under Ryan Stevedoring Co., Inc., v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, the respondent also impleads the independent contractor, Charles Ferran & Co., Inc., libellant's employer, and makes claim over against it for any award which may be made to libellant Pinion.

The repair work in suit was performed pursuant to a written contract between respondent and Ferran, under which contract Ferran agreed to make various general home port repairs to the SS Del Mar. In particular, the contract required Ferran to "Furnish the necessary labor, material and/or equipment" to carry out the work of renewing "approx. 10 ft. of 1″ pipe and fittings in salt water supply line to lavatories in Stateroom A–9." This line extended vertically from the lavatory connection in the stateroom through the deck thereof into the ship's baggage room below. After dropping vertically from the overhead into the baggage room a short distance, the line then angled off horizontally from a 90° elbow for a distance of one foot, and thence again horizontally from a second 90° elbow a distance of approximately two feet where it was connected with a 2-inch pipe line via a reducer.

The horizontal pipe and fittings were slightly over ten feet above the deck of the baggage room. The only scaffolding equipment provided to reach the pipe was a three-foot ladder, used to place baggage in the high baggage racks, and a wooden plank eight inches wide. Pinion and his helper made a scaffold from these two pieces of equipment by placing one end of the plank on a shelf in the baggage room and the other end on top of the three-foot ladder.

At the time of his injury, Pinion had cut the one-inch pipe near the two-inch reducer and, working with his hands above his head to reach the pipe, was in the act of exerting pressure with a wrench applied to the horizontal pipe between the two elbows in an effort to unscrew it. While thus exerting pressure, the vertical pipe which extended through the overhead broke immediately above the elbow, causing Pinion to lose his balance on the narrow eight-inch scaffold and fall to the deck, striking his back on a baggage rack.

Citing Seas Shipping Co., Inc., v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, libellant maintains that the vessel was unseaworthy in that the pipe on which he was working was wasted by corrosion to such an extent that it broke under pressure from his wrench. He also alleges that he was required to use scaffolding provided by the ship which was inadequate in size, dimension and stability, that the scaffolding rendered his working conditions unsafe and, therefore, the vessel unseaworthy.

Respondent ship owner shows that the libel in suit was not filed until one year and seventeen days after Pinion's accident. Applying the Louisiana one-year statute of limitations[1] by analogy, respondent maintains that Pinion's claim is barred by laches. In the alternative, respondent argues that its vessel may not be deemed unseaworthy because of a defect in the pipe which Pinion was sent aboard to remove. Nor is the vessel unseaworthy, respondent says, because of the allegedly inadequate scaffolding for the simple reason that under the contract with Pinion's employer, Ferran was required to furnish equipment necessary to perform the repairs. Respondent also makes the point that Pinion was not a seaman or a longshoreman and, consequently, the doctrine of liability without fault for unseaworthiness has no application in the premises.

◼ The defense of laches is without merit. While it is true that a state statute of limitations may be used as a guide in admiralty, it is not to be applied mechanically. Where it is shown that the delay in filing the libel was excusable and the respondent not prejudiced by the delay, the defense of laches is not successfully made. Gardner v. Panama Railroad Co., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31. Here the libel was filed just seventeen days after one year had run. The shortness of the delay itself indicates quite clearly that no prejudice could have resulted therefrom. Possibly the best evidence that no prejudice resulted from the delay is the competent and comprehensive manner in which respondent's case was presented. There is no indication whatever that respondent's defense was in any way impaired by the delay in filing the libel.

◼◼ Nor was the delay in filing the libel the result of inexcusable neglect. Ferran, Pinion's employer, through its insurer, paid compensation to Pinion for fifty-two weeks under the Longshoremen's and Harbor Workers' Compensation Act.[2] Immediately the year had run, Pinion's compensation was stopped, Ferran and its insurer apparently thinking that with the Louisiana statute of limitations of one year, no third-party action could successfully be brought against the ship owner and, consequently, no claim over could be made by the ship owner against Ferran. Instead of cooperating with its employee in bringing and prosecuting third-party action, as is contemplated by the Longshoremen's and Harbor Workers' Compensation Act,[3] Ferran sought to keep Pinion satisfied by compensation until the danger of the third-party action was past. Under the circumstances, the short delay in bringing the libel did not amount to inexcusable neglect on the part of Pinion.

On the merits, this case involves the interplay of doctrines recently announced by the Supreme Court concerning the relationship of ship owners, independent maritime contractors and their employees. In Seas Shipping Co., Inc., v. Sieracki, supra, the warranty of seaworthiness, announced as to seamen in Mahnich v. Southern Steamship Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, and many other cases,[4] was extended to include a longshoreman. In Pope & Tal-

1. LSA–C.C. art. 3536.

2. 33 U.S.C.A. § 901 et seq.

3. 33 U.S.C.A. § 933.

4. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075; Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082; Carlisle Packing Co. v.

bot, Inc., v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, the warranty was extended to include an employee of an independent ship repair company. On the theory of implied indemnity arising out of breach of contract, Ryan Stevedoring Co., Inc., v. Pan-Atlantic Steamship Corp., supra, recognized the claim over against the independent stevedore or ship repair employer where an employee of the independent contractor has recovered from the ship owner for injuries received by him and caused by unseaworthiness of the vessel created by the independent contractor.

▪ Applying these principles to the contentions of libellant, Pinion, the charge of unseaworthiness in the vessel because of the defect in the pipe must be deemed unfounded. As contended by Pinion, Sieracki, supra, and Hawn, supra, do teach the doctrine of liability without fault based on the warranty of seaworthiness which, applied to the law of the sea, means that unseaworthiness in the vessel, indiscernible even by reasonable inspection, nevertheless renders the vessel liable for personal injuries to workmen resulting therefrom. The non-delegable duty of the ship owner is to furnish a reasonably seaworthy vessel and no amount of due care can absolve him of that legal responsibility. Socony-Vacuum Oil Co. v. Smith, supra; The Arizona v. Anelich, supra; The Osceola, supra. Reasonably seaworthy, however, is a relative term. It does not mean that the vessel must be perfect in all respects at all times. It does mean that the vessel must be reasonably fit to perform the job at hand. Boudoin v. Lykes Brothers Steamship Co., Inc., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354. Although the warranty of seaworthiness continues while the vessel is alongside the dock in a safe harbor,[5] what may be unseaworthiness to a seaman on the high seas may not be to a ship repair man called aboard the

vessel in port to repair or to replace part of her equipment. Bruszewski v. Isthmian S. S. Co., 3 Cir., 163 F.2d 720; Byars v. Moore-McCormack Lines, 2 Cir., 155 F.2d 587.

▪ Here libellant, a ship repair man, was aboard the vessel to replace pipe which was wasting away under the corrosive influence of salt water. He knew the pipe had outlived its usefulness, hence its replacement. Under these circumstances, the ship owner did not warrant the seaworthiness of the pipe, or of the vessel in respect to the pipe. Bruszewski v. Isthmian S. S. Co., supra; Byars v. Moore-McCormack Lines, supra. Quite the converse. By paying Pinion's employer to replace it, the ship owner in effect warranted that the pipe was unseaworthy, that it should not be relied on, that it was dangerous. Under these circumstances, it would be absurd to hold that the vessel herself was unseaworthy and that her owner is liable in damages because of defective pipe which libellant was brought aboard to replace.

▪ Libellant, however, is on much firmer ground with respect to his charge of unseaworthiness by reason of the scaffolding he was required to use in effecting the repairs. An eight-inch board suspended in air is hardly a safe place from which to work, especially where that work includes reaching above one's head and applying pressure on a wrench in the hope of unscrewing, rather than breaking, rusted pipe. It is difficult enough to balance oneself on an eight-inch plank without also being required to perform the arduous work therefrom which Pinion was required to perform. Pinion's fall from that scaffolding when the pipe broke was a direct result of its inadequacy. It unquestionably was unsafe equipment with which to work. As such, it rendered the vessel unseaworthy and her owner liable in damages. Mahnich v. Southern Steamship Co., supra.

Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927; The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; The H. A. Scandrett, 2 Cir., 87 F.2d 708; cf. The

Edwin I. Morrison, 153 U.S. 199, 14 S.Ct. 823, 38 L.Ed. 688.

5. Seas Shipping Co., Inc., v. Sieracki, supra.

Respondent's suggestion that the eight-inch plank which formed part of the scaffolding may have been brought aboard the vessel by Ferran cannot save the ship owner from liability for failure to furnish a seaworthy vessel. Whoever furnished the scaffolding, it was still the nondelegable duty of the ship owner to furnish Pinion adequate equipment and a safe place to work. Alaska Steamship Co., Inc. v. Petterson, 347 U.S. 396, 74 S. Ct. 601, 98 L.Ed. 798. The fact that Pinion was injured as a result of the unseaworthy equipment makes the ship owner liable for his damages, irrespective of fault. Alaska Steamship Co., Inc. v. Petterson, supra; Pope & Talbot, Inc., v. Hawn, supra; Seas Shipping Co., Inc., v. Sieracki, supra; Mahnich v. Southern Steamship Co., supra.

Respondent also suggests that if the scaffolding was inadequate, Pinion was in the best position to make that appraisal. But a person entitled to the warranty of seaworthiness does not assume the risk of unseaworthy equipment. In Mahnich v. Southern Steamship Co., supra [321 U.S. 96, 64 S.Ct. 459] where claim of unseaworthiness was also based on an unseaworthy scaffold, the Court said:

"Whether petitioner knew of the defective condition of the rope does not appear, but in any case the seaman, in the performance of his duties, is not deemed to assume the risk of unseaworthy appliances."

And in Palermo v. Luckenbach Steamship Co., 78 S.Ct. 1, the Supreme Court reversed a judgment of the Second Circuit, 246 F.2d 557, which denied recovery to a longshoreman who was injured when he, knowing a safe alternate passageway was available, elected to return to his work via a ship passageway he had reason to believe was unsafe.

Respondent also denies the warranty of seaworthiness to ship repair workers such as Pinion. It admits that the Supreme Court in Pope & Talbot, Inc., v. Hawn, supra, applied the warranty to Hawn, a ship repair worker, but it seeks to distinguish that case on its facts by suggesting that Hawn, at the time of his injury by falling through an open hatch, was aboard to repair the vessel's grain loading equipment. Since grain loading equipment has something to do with stevedoring work, which the Supreme Court in Sieracki, supra, in applying the warranty of seaworthiness to a longshoreman, said was historically performed by seamen, it would equate the work of Hawn to the work of a longshoreman and thus distinguish it from the replacement of pipe leading to a lavatory. It argues, in effect, that the warranty of seaworthiness was applied to Hawn because at the time of his injury he was performing work traditionally performed by a seaman and that here Pinion was not. The short answer to this argument is that the SS Del Mar herself regularly carries a plumber-machinist as a member of her crew. And a plumber-machinist is precisely the type of seaman qualified to repair or replace short lengths of one-inch pipe. If the warranty of seaworthiness applies to landsmen aboard vessel performing work historically performed by seamen, it should certainly be applied to landsmen aboard performing work currently performed by seamen

In its claim over against Ferran, respondent points to the contract between the parties which required Ferran to "Furnish the necessary labor, material and/or equipment" to carry out the repair work on the SS Del Mar. It argues that if it is held liable herein by reason of Ferran's failure to provide proper scaffolding equipment, then Ferran is obligated to reimburse it for damages caused by the independent contractor's breach of its contract. Respondent is supported in this contention by Ryan Stevedoring Co., Inc., v. Pan-Atlantic Steamship Corp., supra, which held that even in the absence of an express agreement of indemnity, the contractor was obligated to reimburse the ship owner for damages caused by the contractor's

breach of contract and that Section 5 [6] of the Longshoremen's and Harbor Workers' Compensation Act does not bar this relief. On the authority of that case, therefore, this court finds respondent's claim over against Ferran must be recognized.

Decrees accordingly.