Ernest O. DEFFES, Plaintiff,

v.

FEDERAL BARGE LINES, INC.,
Defendant.

Civ. A. No. 11113.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 6, 1964.

Edgar N. Quillin, Arabi, La., Sherman F. Raphael, New Orleans, La., for plaintiff.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, George Denegre, Edmond C. Salassi, New Orleans, La., for Federal Barge Lines, Inc. and Gulf-Canal Lines, Inc.

Adams & Reese, Richard C. Baldwin, Thomas J. Wyllie, New Orleans, La., for Continental Grain Co.

AINSWORTH, District Judge.

Plaintiff has sued Federal Barge Lines, Inc., owner of the Barge FBL 625, and Gulf-Canal Lines, Inc., bareboat charterer of the barge, for damages growing out of an injury he sustained while employed by Continental Grain Company as a grain handler in unloading the barge at a dock in the Port of New Orleans. Defendants have filed a third-party complaint against plaintiff's employer, Continental Grain Company, under the doctrine of Ryan Stevedor. Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). Plaintiff has been paid compensation in full for his injury by his employer, Continental, under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. § 901 et seq.).

On May 27, 1960, plaintiff was working aboard the Barge FBL 625 unloading grain. He claims that while on board he suffered an injury to his right eye from a piece of flying metal thrown from the marine leg used in the unloading operation, which resulted in industrial blindness to the eye. He alleges that the marine leg was defective which made the barge unseaworthy; that the barge owner and charterer failed to provide him with a safe place to work.

The Barge FBL 625 is a "hopper-type" barge of steel-welded construction with steel-rolling covers, 195 feet in length and 35 feet in breadth. It was loaded with a cargo of corn, but was a general classification barge capable of carrying any type of solid cargo. Continental had shipped the corn from St. Paul, Minnesota, to New Orleans under a freight bill and bill of lading in which Continental was both shipper and consignee. Continental loaded and unloaded the cargo.

The evidence showed that the marine leg, which plaintiff alleges caused his injury, is a shore-based elevating conveyor, owned and operated by Continental, used in unloading grain. It is permanently attached to the dock. It is equipped with a conveyor belt on which buckets are attached. The buckets scoop up the grain and carry it from the hold of the vessel to the shore. The unloading operation is divided into four phases. The first is the lowering of the leg into the hold and resting it on top of the grain. The leg remains, however, attached to and based on shore. The only contact which the leg has with the vessel is that it rests on the grain cargo, has cables attached to the vessel for a period of time and during the sweeping-up operation rests on the bottom of the vessel. The raising and lowering of the leg is done with power furnished by a self-contained unit. Large scoops called "air buckets" are then removed from the leg. These "air buckets" are used to bring the grain from the ends of the barge to the centrally located marine leg. The buckets are operated by means of pulleys, one of which is fastened to the vessel and the other to the marine leg. The pulleys and the cables are part of the equipment of the leg. After the

level of the grain is lowered the "air buckets," the pulleys and cables are removed and stored on the marine leg. The third phase of the unloading operation is performed with small bulldozers which do essentially the same task as the "air buckets," that is, bring the grain to the leg. The fourth and final phase is termed "sweeping up." The grain handlers sweep up the grain and shovel it into the marine leg. It was during this phase while plaintiff was shovelling corn into the marine leg that he claims he was injured.

■■ It is settled law that a longshoreman injured while performing a "ship's service" can recover for unseaworthiness. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). A vessel is unseaworthy when it has a defect in its hull, gear, stowage, and appurtenant appliances and equipment. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944); Grillea v. United States, 2 Cir., 1956, 232 F.2d 919.

■ An owner of a vessel may be liable for an unseaworthy condition which has been caused by an independent contractor and the doctrine has been extended to include equipment brought aboard and used and controlled exclusively by stevedores in loading and unloading a vessel. Alaska Steamship Company v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954); Rogers v. United States Lines, 347 U.S. 984, 74 S.Ct. 849, 98 L.Ed. 1120 (1954).

■■ We now consider whether or not the Barge FBL 625 was unseaworthy. Plaintiff bears the burden of showing that the alleged defective equipment which caused his injury was a part of the ship's hull, gear, stowage and appurtenant appliances and equipment. Mosley v. Cia. Mar. Adra, S. A., 2 Cir., 1963, 314 F.2d 223. He contends that the marine leg was defective and that this rendered the barge unseaworthy. He cites as authority in support of his

contention Petterson, supra, and Considine v. Black Diamond Steamship Corp., D.C.Mass., 1958, 163 F.Supp. 109. Considine would extend the warranty of seaworthiness, as applied to longshoremen, to any equipment aboard a vessel used in the traditional work of loading or unloading a vessel, regardless of what type or to whom it belonged. Petterson and Rogers, supra, did not go that far. In Petterson the defective equipment was a block of a type generally used by a vessel. In Rogers the injury was caused by the landfall runner rewinding on the winch drum of the vessel. In McKnight v. N. M. Paterson & Sons, Ltd., 6 Cir., 1960, 286 F.2d 250, cert. denied 368 U.S. 913, 82 S.Ct. 189, 7 L.Ed.2d 130 (1961), and Sherbin v. S. G. Embiricos, Ltd., D.C.E.D.La., 1962, 200 F. Supp. 874, the shipowner's warranty of seaworthiness was limited to equipment which was traditionally a part of a ship's appurtenant appliances and equipment. We concur, believing that the test enunciated in McKnight and Sherbin is the proper one here. Applying that test here, we find that the barge was not unseaworthy, for the marine leg is not equipment traditionally found aboard and used in unloading operations. This equipment was owned by the stevedore and not by the vessel. It was shore based and shore powered and had only a minimal contact with the vessel.

■ But plaintiff further contends that Continental's failure to furnish him with goggles for the protection of his eyes violated the Safety and Health Regulations for Longshoring, 29 C.F.R. § 9.1, et seq., thereby rendering the vessel unseaworthy under the authority of Provenza v. American Export Lines, Inc., 4 Cir., 1963, 324 F.2d 660. Violation of a safety regulation applicable to a stevedore does not render a vessel unseaworthy unless the violation creates a dangerous condition aboard the vessel, which would constitute a defect in the vessel's hull, gear, stowage and appurtenant appliances and equipment. See Provenza v. American Export Lines, Inc., supra. Failure of the stevedore to

provide plaintiff with goggles did not create a dangerous condition which affected the vessel's hull, gear, etc. For Continental's negligence to be imputed to the shipowner, under the facts here, it must be shown that it knew or should have known by the exercise of reasonable care of the stevedore's negligence. The evidence does not show that the shipowner knew of Continental's negligence. The FBL 625 is a dumb barge and was unaccompanied by any personnel at the time of cargo discharge. The vessel owner exercised reasonable care. It is sufficient here that the barge owner had a reputable firm loading and unloading the barge.

Judgment for defendants.