Louis **PARKER**, Plaintiff-Appellant,

v.

**CARGILL, INC.**, et al., Defendants-Appellees.

No. 27533

**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.

Oct. 2, 1969.

Rehearing Denied Oct. 31, 1969.

Eldon E. Fallon, Gerald J. Martinez, Kierr & Gainsburgh, New Orleans, La., for appellant.

George v. Baus, Edmond C. Salassi, Jones, Walker, Waechter, Poitevent, Car-rere & Denegre, and Adams & Reese, New Orleans, La., for appellees.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

PER CURIAM:

Appellant Parker, a shipyard worker employed by Dravo Corporation at its repair facility in Baton Rouge, Louisiana, filed an action in the United States District Court for the Eastern District of Louisiana seeking to recover damages for personal injuries received aboard the coal and molasses barge J–9, owned by appellee Cargill, Inc. He contends that his injuries were caused by an unseaworthy condition for which the vessel owner is liable. The district court found for Cargill, and this appeal was taken. We affirm.[1]

Cargill turned over the barge J–9, empty and unmanned, to Dravo for repairs and cleaning. On February 14, 1964, the barge was placed in a floating dry-dock on navigable waters in the Mississippi River. While thus situated on February 17, 1964, Parker went on board to assist in the cleaning operation. He was injured when he slipped and fell from a ladder while descending into one of the cargo holds of the barge. At the time of injury, Dravo had exclusive custody and control of the barge and the repair and cleaning operations were being conducted under its direction.

The district court found that Parker's injury was caused by either or both of the following conditions: the presence of molasses on the deck and ladder of the barge; the presence of a portable lantern left hanging on a rung of the ladder by another employee of Dravo. The court reasoned that neither of these causal agents could give rise to unseaworthiness liability. The molasses residue on the barge was a condition which Parker as a Dravo employee was called

---

1. Pursuant to new Rule 18 of the Rules of this court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 409 F.2d 804, Part I (5th Cir. 1969).

on board to correct.[2] Relying principally on Moye v. Sioux City & New Orleans Barge Lines, Inc.,[3] the negligently placed lantern was found to be a transitory condition which occurred during the course of performing the repair contract by Dravo and as a result of such performance. It is only this latter conclusion that Parker contests here.

The parties agree that it is not possible to distinguish the present case from *Moye*. Parker, however, urges that *Moye* was erroneously decided and should not be followed. He contends that in reaching its decision, the *Moye* court misconstrued West v. United States.[4]

In *West* the Supreme Court faced the claim of a shipyard worker against a shipowner, grounded in negligence as well as the warranty of seaworthiness. In denying recovery, the Court was influenced by the fact that an independent contractor rather than the owner had custody and control of the vessel at the time of injury. It is Parker's contention, contrary to *Moye*, that *West* treats the element of control as modifying only the potential liability of a shipowner for negligence, and that the absence of control over the circumstances of an injury has no effect on the warranty of seaworthiness. We cannot agree with this contention, and conclude that *Moye* properly interpreted *West* as a sensible but very restrictive limitation on unseaworthiness liability.[5]

As noted in the opinion of Chief Judge Brown concurring in *Moye*,[6] there may be instances in which a shipowner will be liable for injuries to a repairman caused by an unseaworthy condition even though he does not have physical possession of the vessel. However, this will not be the case where the injury is caused by a transitory condition resulting from the course of performing a repair contract by one who alone has present custody and control of the vessel.

The judgment is affirmed.

2. *See*, Pinion v. Mississippi Shipping Company, 156 F.Supp. 652 (E.D.La.1957); Bruszewski v. Isthmian S.S. Co., 163 F.2d 720 (3d Cir. 1947); Byars v. Moore-McCormack Lines, 155 F.2d 587 (2d Cir. 1946); McDaniel v. The M/S Lisholt, 282 F.2d 816 (2d Cir. 1960).

3. 402 F.2d 238 (5th Cir. 1968).

4. 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959). In *West* the injured workman was a member of the crew of an independent contractor employed by the government to completely overhaul an inactive merchant ship. The vessel, after several years in "moth balls", had been towed to the contractor's repair dock for the express purpose of rendering her seaworthy.

5. Parker's criticism focuses on a passage quoted by the *Moye* opinion from West v. United States:
   "Petitioner overlooks that here the respondent had no control over the vessel, or power either to supervise or to control the repair work in which petitioner was engaged. We believe this to be decisive against both aspects of plaintiff's dual theory [of warranty of seaworthiness and negligence]." 402 F.2d at 240.

   Parker contends that the insertion in brackets of the phrase "of warranty of seaworthiness and negligence", which did not appear in *West*, does not accurately identify the antecedent of the phrase "plaintiff's dual theory." He discounts identical treatment by the Second Circuit in Lawlor v. Socony-Vacuum Oil Co., 275 F.2d 599 (2d Cir. 1960), as identical error.

   Assuming arguendo that the quotation has been used inappropriately, neither the vitality of *Moye*, nor the aptness of its interpretation of *West* is thereby impaired.

6. 402 F.2d at 241.