**Samuel MOCK**

v.

**UPPER MISSISSIPPI TOWING COMPANY.**

**Civ. A. No. 67–606.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Dec. 29, 1971.

Orlando Bendana, Robert L. McLaughlin, of Bendana & McLaughlin, New Orleans, La., for plaintiff.

Maurice Hebert, H. Martin Hunley, Jr., of Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., for defendant.

CHRISTENBERRY, District Judge.

This maritime matter was tried without a jury on March 9, 1970. On September 30, 1970, the court found that the defendant's barge had been unseaworthy and that that unseaworthiness was a proximate cause of plaintiff Mock's injuries. After additional consideration of the question of damages,

470

the court, on September 27, 1971, awarded plaintiff a recovery in the amount of $7,161.95. Out of this amount the court directed that $1,394.21 be paid to the stevedore's casualty insurer, the New Amsterdam Casualty Co. The case is presently before the court on a timely motion for a new trial brought by defendant, Upper Mississippi Towing Co., pursuant to rule 59 of the Federal Rules of Civil Procedure.

The facts in this case are not in controversy, except as to the question of the availability of protective eye equipment. Samuel Mock at the time of the accident on March 6, 1966, was employed by Public Grain Elevator of New Orleans, Inc. As a laborer it was Mock's duty, *inter alia*, to assist with the discharging of grain from barges at the site of Grain Elevator's operations in New Orleans. The vessel in question, an unmanned hopper barge with steel rolling covers designated the UM-288, was owned by defendant Upper Mississippi Towing Co. and at the time of Mock's injury was under charter to the C. B. Fox Company who was the owner of the cargo of grain on board the barge. Fox made the arrangements with Grain Elevator for the off-loading of the grain and the barge was towed alongside Grain Elevator's wharf on the Mississippi River on March 5, 1966, by a tug belonging to Point Landing, Inc. The arrangements for tug services were also made by Fox.

The unloading operation was conducted entirely by Grain Elevator personnel. The barge was placed under a marine leg and the cargo covers on the barge were rolled back to expose the grain. The marine leg, a mechanical elevator device owned and operated by Grain Elevator, is essentially a conveyor belt to which buckets are attached for the transference of grain from a barge to the elevator. The leg is permanently secured to the wharf and power for operating the leg is provided by shore-based facilities and equipment owned by Grain Elevator. The buckets are connected to the leg by cables and operate on a system of hooks, pulleys, and cables. The

cables used to pull the buckets filled with grain from the bottom of the barge up to the leg and the conveyor belt are, in the longshoring vernacular, "pull-in" cables, measuring ⅝ of an inch in diameter. The cables used to return the buckets to the barge for more grain are termed "pull-back" cables, measuring 9/16 of an inch in diameter.

In the early morning of March 6, 1966, at about 3:30 A.M., while working on the wharf in the general operation of unloading the grain cargo of the UM-288, Mock realized that the leg mechanism was malfunctioning due to a cable that was beginning to unravel. After about three minutes, Mock correctly surmised that the other man must be having trouble, and thus Mock boarded the UM-288. Because of difficulty in removing a nut securing the cable, Mock and the other man, in accordance with the foreman's policy, proceeded to attempt to cut some of the worn strands of the frayed cable. The method used was to place the frayed cable, held by Mock, on a two-by-four piece of wood for support. It was while holding the cable with his fellow employee, Phillip Hospedales, using a cable cutter on it that a small sliver of the cable flew into the air and lodged in the plaintiff's eye.

In seeking a new trial, defendant argues that the court erred in the following particulars: (1) in stating in a minute entry of September 30, 1970, that the unseaworthiness had been "a" proximate cause of plaintiff's injury vice "the" proximate cause; (2) in finding that the warranty of seaworthiness under the general maritime law applied to plaintiff Mock since defendant contends that Mock was serving in the capacity of "repairman" when he was injured; (3) that safety eye goggles were available thus negating unseaworthiness based on an alleged violation of safety regulations; and, finally, (4) that defendant shipowner here does not owe the warranty of seaworthiness to a longshoreman in this situation, *i. e.*, where the Barge UM-288 is in the physical custody and absolute control of the

stevedore or independent contractor, such as Grain Elevator, since the condition of unseaworthiness is transitory in nature. For the reasons hereafter assigned, I have decided that the original finding of unseaworthiness was correct and must stand.

In the court's minute entry of September 30, 1970, it was stated that ". . . the Barge UM–288 was unseaworthy and that that unseaworthiness was a proximate cause of the plaintiff's injuries . . . ." Defendant now offers the semantically unsound argument that the court erred in stating that the unseaworthiness was "a" proximate cause rather than "the" proximate cause. There is no basis here for such hairsplitting. The important aspect, assuming unseaworthiness, is whether there was a direct causal connection between the unseaworthy condition and the injury. The Second Circuit Court of Appeals has approved the following explication of the doctrine:

> [A] finding of unseaworthiness of the vessel . . . without more is not enough to hold the defendant liable in damages.
>
> Its liability also depends on whether the unseaworthiness . . . was a proximate cause of injury. To be a proximate cause there must be a direct causal connection between the unseaworthiness . . . and the injury. In other words there must be an unbroken chain of events flowing from the unseaworthiness . . . and leading to the injury. Assuming that you found the vessel unseaworthy . . . you must then decide whether there was this causal connection between the unseaworthiness . . . and injury to the plaintiff.

Blier v. United States Lines Co., 286 F. 2d 920, 925 (2d Cir.), cert. denied, 368 U.S. 836, 82 S.Ct. 32, 7 L.Ed.2d 37 (1961).

██ It is this court's opinion that the barge was rendered unseaworthy by the defective cable on the marine leg and by the failure to provide in a reasonable manner safety eye goggles. Whether the resulting unseaworthy condition was "a" or "the" proximate cause is immaterial so long as it was one or the other. In this case it is sufficient that the unseaworthy condition was a proximate cause of plaintiff Mock's injury.

The court has carefully studied the opinion of Deffes v. Federal Barge Lines, Inc., 361 F.2d 422 (5th Cir.), cert. denied, Continental Grain Co. v. Deffes, 385 U.S. 969, 87 S.Ct. 503, 17 L. Ed.2d 433 (1966), where the Fifth Circuit exhaustively analyzed the law applicable to a situation almost on all fours with the present case. In Deffes the plaintiff was injured while working as a stevedore unloading grain from a barge which at the time was under charter. The injury was due to an alleged defect in the marine leg which occurred while the plaintiff was in the barge sweeping the remainder of the grain into the leg which at the time was resting on the bottom of the barge. Plaintiff contended that he was injured in the eye by a piece of metal that broke off from a worn bucket. In a suit against the barge owner for unseaworthiness for the defective marine leg and failure to provide safety eye goggles, the Fifth Circuit reversed the district court and held that Deffes was covered by the warranty of seaworthiness. It had been the lower court's opinion that the seaworthiness warranty did not extend to Deffes because the marine leg was not equipment traditionally used in unloading operations and, in addition, that violation of a safety regulation by the stevedoring company, such as failure to provide goggles, would not render the vessel unseaworthy since the barge owner had used reasonable care in hiring a reputable firm to load and unload the barge. Deffes v. Federal Barge Lines, Inc., 229 F.Supp. 719, 721–722 (E.D.La.1964).

The Fifth Circuit held that the barge was unseaworthy because of the defective leg and therefore found it unnecessary to consider whether the failure of the stevedoring company to make available safety eye goggles was also a factor

that could create unseaworthiness in the *Deffes* fact situation. 361 F.2d at 427.

As to the defendant's argument that plaintiff Mock was a repairman at the time of his eye injury and therefore not entitled to the warranty of seaworthiness as to the thing he was repairing, the court must take exception. Mock's duties on March 6, 1966, when he was injured, were, as outlined above, to assist in the unloading of the barge. Specifically, he stated he was the "out man" in the unloading process meaning that he could station himself either on the dock or in the barge while his partner was operating the marine leg. In the event of any malfunction or in the event that the operator needed assistance then Mock was there to help in whatever capacity he was needed.

Mock stated that at about 3:30 A.M. he saw the operator board the barge and enter the cargo compartment in order to fix the unraveling cable. After about three minutes, realizing that his partner Hospedales was having trouble, Mock boarded the barge to assist in removing the worn cable. When it became apparent that it would be very difficult to remove the frayed cable the two men decided simply to cut the frayed strands and continue the unloading operation with what remained of the cable. This, stated Mock, was the foreman's policy. Because of the nature of Mock's employment and the type of work in which he was engaging at the time of the injury, Mock cannot in these circumstances be denied the protection of the warranty of seaworthiness by being forced to assume the status of a repairman.

It is true that a repairman who is aboard a vessel to repair an admittedly unseaworthy condition should not be entitled to rely upon the warranty of seaworthiness for an injury caused by that very condition. Bruszewski v. Isthmian S. S. Co., 163 F.2d 720, 722 (3d Cir. 1947); Pinion v. Mississippi Shipping Co., 156 F.Supp. 652, 656 (E.D.La.1957). It would be contrary to the broad humanitarian policy underlying the seaworthiness doctrine, however, to extend the repairman exemption to Mock who qualifies as a *Sieracki* seaman by the type of work he was performing for Grain Elevator. Deffes v. Federal Barge Lines, Inc., 361 F.2d 422, 425 (5th Cir.), cert. denied, Continental Grain Co. v. Deffes, 385 U.S. 969, 87 S. Ct. 503, 17 L.Ed.2d 433 (1966); *cf.* Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). I take the view that the plaintiff was acting in furtherance of his primary duty of assisting in unloading the barge and that such routine maintenance on a cable that began to unravel did not suddenly deprive him of the warranty of seaworthiness—even though the injury resulted from the minor maintenance and repair work being done by Mock on a cable that had been wearing for an extended length of time. Thus it is my opinion that the worn cable created an unseaworthy condition. In view of Mock's duty to do anything necessary to assist in unloading the grain, the warranty of seaworthiness did extend to him and his injury had as a proximate cause this unseaworthy condition.

An additional unseaworthy condition which also was a proximate cause of Mock's eye injury was the failure of the defendant to provide eye protection equipment as required by the Bureau of Labor Standards under Safety and Health Regulations for Longshoring, 29 C.F.R. § 1504.101, and as authorized by Title 33 U.S.C. § 941(a) (1964). This regulation requires that

> (a) When, because of the nature of the cargo being handled, an eye hazard from flying particles or heavy dust exists, employees shall be protected by eye protection equipment.
>
> • • •

There was considerable disagreement in the testimony of witnesses employed by Grain Elevator as to the availability of eye goggles. The plaintiff testified that Grain Elevator, as far as he knew, at the time of the accident did not have protective eye equipment available. When he returned to work for Grain Elevator about two months after the accident he stated that signs had been posted warning employees to wear goggles.

At that time, he testified, only one or two pairs of goggles were available and they had to be searched for. Agreeing with the plaintiff was his foreman, Salvadore Barrouso, who testified that goggles were not available on his shift. Four other employees or erstwhile employees testified that goggles were available if one followed prescribed procedures which entailed obtaining a slip or receipt from the foreman and then checking out the goggles which were to be returned upon leaving employment with Grain Elevator.

On the evidence made available it appears that protective eye equipment was not reasonably available although it could be obtained. It was brought out that the man with Mock when the accident occurred was wearing goggles which were his own. Mock was a laborer and in the court's opinion it is the duty of his employer, in view of the dangerous nature of the work, to ensure a positive degree of supervision regarding such things as the necessity of wearing eye goggles. Because of the relative inaccessibility of the goggles, the cases cited by the defendant are distinguishable. *E. g.*, Taylor v. S. S. Helen Lykes, 268 F.Supp. 932, 934–935 (E.D.La.1967), aff'd, 402 F.2d 777 (5th Cir. 1968). This finding that the failure to provide in a reasonable manner protective eye equipment created an unseaworthy condition which was a proximate cause of the injury is required if the mandate of the Supreme Court concerning unseaworthiness and its underlying policies is to be effectuated. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

■■ Lastly, defendant argues for a new trial on the ground that its barge was in the physical custody of Grain Elevator who was under a contractual obligation to perform the work in a workmanlike manner. Pursuing this line of reasoning, defendant contends that it cannot be held responsible for a transitory unseaworthy condition arising while the vessel is under the absolute control of an independent contractor such as Grain Elevator. In support defendant cites Parker v. Cargill, Inc., 417 F.2d 772 (5th Cir. 1969). *Parker*, however, would seem to make it clear that a shipowner can only escape his duty to provide a seaworthy vessel when the vessel is in the absolute custody of an independent contractor who has taken control of the vessel to perform a repair contract and when the unseaworthiness is caused by a transitory condition arising out of the performance of the repair contract. *Parker, supra*, 417 F.2d at 774. See West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); Moye v. Sioux City & New Orleans Barge Lines, Inc., 402 F.2d 238 (5th Cir. 1968). On this point *Deffes* is dispositive. As stated above that case also involved a laborer such as Mock who was injured by an unseaworthy condition arising from a defective marine leg when the barge was in the absolute control and custody of the stevedore company. In spite of the "control" element and the "transitory" nature of the unseaworthy condition, the Fifth Circuit stated:

Loading and unloading is clearly held to be "work of the ship's service." Sieracki, supra; Crumady v. The Joachin Hendrik Fisser, 1959, 358 U.S. 423, 427, 79 S.Ct. 445, 3 L.Ed.2d 413; Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 323, 84 S.Ct. 748, 11 L.Ed.2d 732. Pope & Talbot v. Hawn, supra, instructs us to look to the *type of work* performed to determine the extent of liability under the doctrine of seaworthiness. Here we have a claimant who was admittedly injured while unloading a cargo of grain. Therefore, there can be no doubt that he is within the scope of the doctrine.

*Deffes, supra*, 361 F.2d at 425.

For the foregoing reasons, the motion by defendant Upper Mississippi Towing Company for a new trial is denied.

It is so ordered.