486 F.2d 955
 Beatrice T. WAGANER, as Administratrix of the Estate of
Louis P. Waganer, Jr., Deceased, Plaintiff-Appellant,
v.
SEA-LAND SERVICE, INC. and S. S. MAIDEN CREEK, her engines,
etc., Defendants-Appellees.
 No. 72-2570.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 19, 1973.
 
 Joe H. Little, Jr., Hardy B. Smith, Mobile, Ala., for plaintiff-appellant.
 W. Boyd Reeves, Geoffrey V. Parker, Mobile, Ala., for defendants-appellees.
 Before ALDRICH*, SIMPSON and CLARK, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Mrs. Waganer brought the action below as administratrix of the estate of Louis P. Waganer, her husband, who died intestate. She appeals from the granting of summary judgment in favor of the defendant-appellee Sea-Land Service, Inc. (Sea-Land). Mrs. Waganer alleged negligence of Sea-Land and unseaworthiness in the maintenance of the S.S. Maiden Creek, a vessel owned by it on which her husband received fatal injuries. The appellant asserts that summary judgment was entered when there were unresolved and contested issues of material fact in the case and that summary judgment was therefore erroneously entered. We agree and reverse.
 
 
 2
 The S.S. Maiden Creek, an American flag vessel owned by Sea-Land, docked at the Alabama State Docks in Mobile, Alabama on January 1, 1971, and there discharged her cargo. The ship's crew, except for four officers, was released the next day, and the power plant was shut down. The ship was towed to the Mobile repair yard of the Alabama Drydock and Shipbuilding Company (ADDSCO) where it remained from January 4th to January 24th. During that time all power, steam, and water used by the vessel were supplied from shore by ADDSCO.
 
 
 3
 During the period of repairs, no meals were served on board, the sanitary facilities were inoperative, and none of the remaining officers on duty slept on board. The purpose of the repair work was to perform the maintenance required by the American Bureau of Shipping, pursuant to a survey which had been completed in part prior to the S.S. Maiden Creek's arrival at ADDSCO.
 
 
 4
 On January 14, 1971, during the course of these repairs, appellant's husband, Louis P. Waganer, Jr., an employee of ADDSCO, fell from the third deck of the number three cargo hold into the after port deep tank and was pronounced dead on arrival at a nearby hospital. With two other employees plaintiff's decedent was patching and replacing some four inch drainage pipe with welding equipment. Immediately prior to the accident, a power failure took place in the lighting circuit which supplied light to the area in which Mr. Waganer was working. All three employees, using flashlights, made their way out of the hold by a ladder located at one end. About ten minutes later with the power failure still uncorrected Waganer re-entered the hold by the ladder to finish a welding job. His fall into the deep tank occurred moments later. There were no safety devices or ropes around the deep tank and no emergency lighting equipment in the area. The protective covers of the deep tanks had been removed by ADDSCO during the repairs.
 
 
 5
 Mrs. Waganer's suit alleged negligence by Sea-Land and unseaworthiness of its vessel, the S.S. Maiden Creek. The district court found and stated in its Conclusions of Law, that the vessel had been withdrawn from navigation, had been undergoing major repair work, was under the control and custody of ADDSCO and not Sea-Land, and that therefore no warranty of seaworthiness existed. It further found that the repair work created the unsafe working condition, and that as a matter of law Sea-Land could not be found negligent under West v. United States, 1959, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161. This appeal attacks each of these conclusions as erroneous in that material issues of fact remained unresolved with respect to each, asserting that these issues required disposition by a trier of fact at trial, not by the court on a motion for summary judgment.
 
 WARRANTY OF SEAWORTHINESS
 
 6
 Seas Shipping v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 established the right of shore based workers to an action for breach of the warranty of seaworthiness first recognized by the Court as available to seamen in The Osceola, 1896, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. West v. United States, 1959, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161, carefully delineated the parameters of that doctrine. While Sieracki extended the seaworthiness warranty to shore-based workers who were on board ship and performing work traditionally done by seamen, West limited its application to "ship's work", which the court said was to be determined by examining, "the status of the ship, the pattern of the repairs, and the extensive nature of the work contracted to be done, rather than the specific type of work that each of the numerous shore-based workmen is doing on shipboard at the moment of injury." 361 U.S. at 122, 80 S.Ct. at 192, 4 L.Ed.2d at 165. As developed by the case law following West this limitation may be roughly equated with the following requirements: (i) the ship in question must have been in navigational status, and not "dead", which in turn depends upon whether the contracted work is minor or major, and who has custody and control of the ship while the work is being done; and (ii) the pattern of repair must reflect work traditionally and ordinarily done by seamen, excluding persons performing such tasks as making major repairs requiring drydocking or special skills.
 
 A. Navigational Status
 
 7
 Initially we note that whether a ship is "in navigation" is a question of fact for determination by the fact finder. Roper v. United States, 1961, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1. Very recently we have restated and reiterated the West criteria for determining the status of a vessel for purposes of maritime tort liability, saying that "inquiry should focus on the extent of repair operations and on who controls those operations." Edwin v. Lykes Brothers Steamship Co., 5 Cir. 1973, 472 F.2d 1217, 1219. A primary touch-stone for distinguishing between major and minor repairs is the purpose for which the vessel has been idled. "[A] vessel which temporarily leaves commerce, enters a shipyard for minor repairs, and thereupon returns to commerce, remains in navigation for purposes of the warranty." Delome v. Union Barge Line Co., 5 Cir. 1971, 444 F.2d 225, cert. denied, 1972, 404 U.S. 995, 92 S.Ct. 534, 30 L.Ed.2d 547. The pleadings and deposition evidence before the lower court showed that the S.S. Maiden Creek was docked for a survey and repairs required by the American Bureau of Shipping of all American flag vessels every five years, and not because Sea-Land intended to take it out of commerce. The vessel entered port under its own power and had already completed part of the survey. The Chief Mate, Taylor, testified on deposition that no "major" repairs were to be done, that is, that no structural changes, alterations in the hull, or major overhauling were contemplated. Further, the affidavit of John H. van Aken, a marine surveyor and consultant, indicated that he felt the repairs to be minor. The lay up time was twenty-one days in all. Under similar circumstances, this court has held that to deny navigational status to the ship in question "seems hardly plausible." Drake v. E. I. DuPont deNemours & Co., 5 Cir. 1970, 432 F.2d 276, 277. Without intimating an opinion as to how the trier of fact should resolve the question, we are constrained to hold that there is a genuine issue of fact as to the extent of the repairs to be done by ADDSCO.
 
 
 8
 Similarly, the question of custody and control does not appear to us to be devoid of factual dispute. Appellee Sea-Land asserts that the evidence adduced thus far establishes unequivocally that ADDSCO had complete control and custody of the S.S. Maiden Creek. Assuming our agreement with that proposition, we are nevertheless mindful that "an injured ship repair employee may have a valid claim against a shipowner for damages due to unseaworthiness of the vessel where control of the vessel has been relinquished by the owner. But each case depends on its own facts and circumstances, . . ." Johnson v. Oil Transport Company, 5 Cir. 1971, 440 F.2d 109, 115. See further Chief Judge Brown's concurrence in Moye v. Sioux City & New Orleans Barge Lines, Inc., 5 Cir. 1968, 402 F.2d 238, 241, cited approvingly by Johnson, observing that "[i]t is a mistake, but not one made by this court in this opinion, to read West as a holding that once all of the ownercharterers' employees have left the scene the warranties of seaworthiness or Jones Act statutory obligation of furnishing a safe place to work will evaporate." It is undisputed here that initially four and later five officers were on board during regular working hours and at the time of the accident. Chief Mate Taylor's deposition indicated that he had some degree of authority with respect to safety conditions on board. Sea-Land employed watchmen during the weekends and evenings when officers were not on board. We conclude that the question of custody and control, even if dispositive of the status issue, is not without dispute from a fair reading of the pleadings and the depositions and affidavits present. As already noted the cases dealing with custody and control emphasize its limited evidentiary value. We determine that a genuine issue of material fact exists as to the navigational status of the S.S. Maiden Creek at the time of the decedent's fatal accident January 14, 1971.
 
 B. Work Ordinarily Done by Seamen
 
 9
 The existence of an issue of fact with respect to the custody of the ship and the extent of repairs to be performed does not, of course, necessarily mean that summary judgment was improper in this case. Plaintiff was further obligated to show that the pattern of repair work being done by ADDSCO was work traditionally and ordinarily done by seamen. Apparently because it determined the issue of navigational status adversely to the appellant, the district court did not make a finding as to the pattern of repair or refer to it in the Conclusions of Law.
 
 
 10
 Some preliminary observations may put our analysis of this point into focus. First, while we examine the "pattern of repair" which West makes a part of the seaworthiness doctrine by looking at the work actually performed, some courts prefer to consider this aspect of the standard under the rubric of "extent of the work contracted for." See, e. g., Watz v. Zapata Off-Shore Co., 5 Cir. 1970, 431 F.2d 100, 108. Provided all the West prerequisites are met, though, we do not consider the captions under which they are organized to be of particular significance. We emphasize also that West requires that the focus of inquiry be upon the pattern of repairs, rather than the specific type of work being done by each shore-based seaman at the time of injury. Neither party on brief takes cognizance of this qualification. Appellant argues that Mr. Waganer was doing welding which seamen ordinarily do. Sea-Land counters by asserting that its seamen would not do that particular type of repair work. Both assertions miss the point since the issue to be resolved is whether the work being done by ADDSCO's employees as a group is that ordinarily done by seamen. A similar problem existed in Delome v. Union Barge Line Co., supra, in which a shore-based employee who was to perform minor shipfitting repairs was injured while attempting to board the ship. Denying benefit of the warranty of seaworthiness as to Delome, we said that "whatever Delome's particular function may have been, his crew was engaged in a specialized task demanding training and skills not customarily found among seamen." Delome v. Union Barge Line Co., supra, 444 F.2d at 232. Accord, Drake v. E. I. DuPont deNemours & Co., 5 Cir. 1970, 432 F.2d 276, 278.[1] It is not our function as an appellate court to decide a factual issue not reached by the district court and not correctly treated by the briefs of the parties. We refuse to hold as a matter of law that appellant did not meet the burden of showing that genuine issues of material fact exist. As to the prima facie application of the warranty of seaworthiness, it was error for the trial court to enter summary judgment against the plaintiff.
 
 EXCEPTION TO THE WARRANTY OF SEAWORTHINESS
 
 11
 Some of our cases recognize that a recovery for unseaworthiness may be denied even though the plaintiff establishes prima facie application of the warranty. The exception obtains where injury results from a transitory condition created by the repair contractor and relating to the subject matter of the repair contract. Sea-Land claims that this doctrine bars appellant's suit notwithstanding any possible finding of actionable unseaworthiness.
 
 
 12
 This exception was first articulated in this circuit by Judge (now Chief Judge) Brown's concurring opinion in Moye v. Sioux City & New Orleans Barge Lines, Inc., supra, 402 F.2d at 241:
 
 
 13
 "If the circumstance bringing about the injury is a transitory condition resulting from the course of performing the contract by one who alone has the present custody and control of the vessel, then the warranty of seaworthiness-which may exist simultaneously as to these very same shore workers concerning conditions over which the operating ship owner (charterer) has a realistic physical responsibility-does not extend to such person for such condition." (Emphasis supplied)
 
 
 14
 See also Watz v. Zapata Off-Shore Co., supra, 431 F.2d at 108, n. 8; Patterson v. Humble Oil and Refining Co., 5 Cir. 1970, 423 F.2d 883; Parker v. Cargill, Inc., 5 Cir. 1969, 417 F.2d 772.
 
 
 15
 Appellee's claim that this case falls within the exception set out above fails at least at this juncture because it assumes a fact that we have already determined is in genuine dispute, exclusive custody and control vel non of the S.S. Maiden Creek. This circuit has applied this exception only when the repair contractor's sole custody and control has been established. But, as pointed out in our discussion of navigational status, appellant alleged that Sea-Land, by virtue of the five remaining officers on board, had retained custody and control of the ship, at least as to some parts and for some purposes, including safety and inspection. Thus the applicability of the contractor-created-hazard exception depends upon a prior finding by the trier of fact as to custody and control.
 
 
 16
 As to custody and control, we make a further observation. The district court, in its Conclusions of Law, found that Sea-Land was not negligent for failure to provide a safe place to work. This finding was based on that part of the West opinion which immunized the ship owner from liability for unsafe conditions created by the contractor when the ship was under the custody and control of the latter. Again, as such a finding presumes that which we have determined to be a genuine issue of material fact, it can be sustained only if, on remand, the trier of fact finds that ADDSCO did have exclusive control and custody of the ship.
 
 CONCLUSION
 
 17
 This case does not reach us with findings of fact made after trial. If it did our review would be under the "clearly erroneous" doctrine of Rule 52(a), F.R.Civ.P. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed.20. But the factual issues have not been tried so that we review the judgment below under the rigid standards attendant upon the entry of summary judgment under Rule 56, F.R.Civ.P. It should go without saying that we intimate no opinion as to the ultimate appropriate resolution of the factual issues we determine are still present.
 
 
 18
 Reversed for further proceedings.
 
 
 
 *
 Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation
 
 
 [1]
 Our discussion in the text should not be construed as extracting from the precedents in this circuit a strict rule that the "pattern of repairs" doctrine of West must be applied in every case rigidly and without modification or exception. We can visualize situations which may call for an exception, that is where the overall repair work is of a nature not traditionally done by seamen, but where one of the shore-based workers comes aboard to perform work clearly that of a seaman. Suppose, for example, that preliminary to extensive repairs, it became necessary to hoist a signal on the ship indicating the presence aboard of dangerous explosive material, and a shore-based worker was injured performing this task, not only seamen's work, but also work requiring no particular skill. This is not the case before us, and we emphasize that the question posed is in our judgment an open one