James E. McDANIEL, Libelant-Appellant,

v.

THE M/S LISHOLT, her engines, etc.,
and A/S Lise, her owner,
Respondent-Appellee.

No. 330, Docket 26138.

United States Court of Appeals
Second Circuit.

Argued May 12, 1960.

Decided Sept. 22, 1960.

Hugh S. Williamson, of Maclay, Morgan & Williams, New York City (William I. Stoddard, of Maclay, Morgan & Williams, New York City, on the brief), for libelant-appellant.

Francis X. Byrn, of Haight, Gardner, Poor & Havens, New York City (James M. Estabrook and Thomas F. Molanphy, of Haight, Gardner, Poor & Havens, New York City, on the brief), for respondent-appellee.

Before CLARK, MOORE, and FRIENDLY, Circuit Judges.

CLARK, Circuit Judge.

On the previous appeal of this case this court held that respondent was not under a duty to provide a seaworthy ship to libelant, a shore-based fireman, and that its only duty to libelant, whose status aboard the ship was that of a licensee, was to refrain from willful or wanton negligence. McDaniel v. The M/S Lisholt, 2 Cir., 257 F.2d 538, affirming D.C. S.D.N.Y., 155 F.Supp. 619. The Supreme Court in a Per Curiam opinion, 359 U.S. 26, 79 S.Ct. 602, 3 L.Ed.2d 625, remanded the cause "for a new trial in

light of Kerm.\rec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550." Upon remand, the district court, per Chief Judge Ryan, found that respondent's actions were not negligent as to libelant and dismissed the libel. D.C.S.D.N.Y., 180 F.Supp. 24. This appeal followed.

Since the facts of the case are described at length in the two district court opinions, as well as in the prior opinion of this court, we find it unnecessary to restate the details of the accident beyond those required for our discussion. A fire broke out on the M/S Lisholt at about 12:45 a. m. on February 6, 1954, while she lay moored at Balboa Docks, Panama Canal Zone. The fire was considered extinguished at approximately 8:00 a. m., and the Zone Fire Department after inspecting the vessel removed all but two firemen who remained aboard as fire watchmen. Later in the day the number was reduced to one, to which position libelant was assigned at 4:00 p. m. At approximately 5:30 p. m., while libelant was inspecting the vessel's freeze box, investigating reports of a gaseous odor, an explosion occurred from which he received serious injuries. It was subsequently ascertained that the cork insulation in the interior of the wall of the freeze box had been smoldering since the fire, creating an explosive atmosphere of carbon monoxide and other unknown gases.

We need pause only briefly with libelant's assertion that he was entitled to a warranty of seaworthiness. The short answer is that the contention was disposed of by this court's prior decision, since we do not read the Supreme Court's opinion as disapproving our ruling on this issue. As we there stated, "There can be no duty to furnish a seaworthy ship to a fireman who was on the vessel knowing it to be unseaworthy, and was on board because of its unseaworthiness." 2 Cir., 257 F.2d 538, 540. See also West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161; Filipek v. Moore-McCormack Lines, Inc., 2 Cir., 258 F.2d 734, certiorari denied 359 U.S. 927, 79 S.Ct. 605, 3 L.Ed.2d 629; Bruszewski v. Isthmian S.S. Co., 3 Cir., 163 F.2d 720, certiorari denied 333 U.S. 828, 68 S.Ct. 451, 92 L.Ed. 1113.

Libelant, in his brief, page 10, bases his claim of negligence upon the "contention that the officers of the vessel were put on notice repeatedly as to the unusual and potentially dangerous condition of the freeze box." But we agree with Chief Judge Ryan's conclusion that respondent could not be charged with such notice before 4:30 p. m. Finding No. 9 by Judge Edelstein at the first trial, D.C.S.D.N.Y., 155 F.Supp. 619, 621, as modified by stipulation between the parties, sets forth that between 9:00 and 10:00 a. m. the chief cook and chief steward noticed "gas or smoke or something" in both the chill and freeze rooms. It was also found, however, that, since there was smoke throughout the ship, they did not take much notice of it and did not suspect any danger. Further the steward knew that the refrigerant was harmless freon gas. Neither this inspection nor the steward's report thereof to the master constituted notice of the dangerous condition. The master's belief that there was so much smoke in the chill and freeze rooms that nobody could go down there is indicative only of his decision following the steward's report to postpone the removal of the stores until the smoke had cleared away. At about 11:30 a. m. a slight refrigerant odor was detected in the freeze room; but Kinsman, assistant to the superintendent, Terminals Division, Panama Canal Company, and Hignett, representative of the vessel's general agent in the Canal Zone, were assured that the refrigerant was freon, which was neither inflammable nor toxic. This belief that the odor was that of freon gas, coupled with knowledge of the harmlessness of such gas, lulled the ship's officers and representatives into a false security.

About 3:00 p. m. the discharging of stores from the provision and chill rooms, adjacent to the freeze room, commenced. Sometime after 4:30 p. m., stevedore foremen Cole and Freeman inspected the

freeze room and noticed a strong concentration of gas. Cole reported this condition to ship's agent Hignett in the presence of the first officer, stating that "he was not too happy about the condition of the freeze box and that they had been in it but had closed it again." Hignett ascertained that a chemist had been sent for and that a blower had been ordered installed to ventilate the area, although it was not yet in operation. Freeman notified libelant that "the men would not work in the meat box because of the presence of gas." Libelant thereupon accompanied Freeman to the freeze room and upon entering detected what he believed to be ammonia gas, which he thought highly explosive. He went up on deck to notify the fire department, but upon meeting the chemist decided to return to the freeze room for a further inspection. It was during this inspection that the explosion occurred.

While respondent's officers thus had notice at approximately 5:00 p. m. that conditions in the freeze room were deteriorating, it is not clear how they could have prevented libelant's injuries. Any further action in instigating an inspection of the freeze room would seemingly have consisted in asking libelant to investigate the reported gaseous odor. But this was already occurring through Freeman's intervention. Libelant contends that respondent was under a duty to order the area cleared; but while this might be relied upon by longshoremen who were injured or killed, it is of no avail to libelant, who knew that an explosive gas was present when he entered the area a second time. Further, respondent had no power to prevent libelant from entering the area. It is suggested, however, that the explosion was caused by the lighting of a cigarette by a stevedore, and thus removal of the men would have prevented the accident. But two trial judges have found that libelant's evidence was insufficient to establish this as the cause of the explosion; and we cannot say that this finding was "clearly erroneous." McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20.

 Libelant also seems to assert that if respondent was negligent as to the longshoremen, it was negligent as to him, since "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed.2d 55. But the Court was there concerned with rejecting the conceptual distinctions between the duty owed to an "invitee" and a "licensee." A libelant who seeks recovery for negligence must still show a breach of duty owing to himself, Palsgraf v. Long Island R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253, and, more fundamentally, that his injuries would not have occurred but for such breach of duty.

The judgment is affirmed.