Frank B. HURST, Libelant,

v.

POINT LANDING, INC., Avondale Marine Ways, Inc. and Sioux City and New Orleans Barge Line, Inc., Respondents.

No. 4109, Division D.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 10, 1962.

Louis A. DiRosa, Edgar J. Monjure, New Orleans, La., for libelant.

Deutsch, Kerrigan & Stiles, Christopher Tompkins, New Orleans, La., for Point Landing, Inc.

Drury, Lozes & Dodge, James H. Drury, Felicien P. Lozes, New Orleans, La., for Avondale Marine Ways, Inc.

Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, J. Y. Gilmore, Jr., New Orleans, La., for Sioux City and New Orleans Barge Line, Inc.

AINSWORTH, District Judge.

Libelant claims damages for injuries growing out of an accident which occurred on June 1, 1958, at approximately 3:30 a. m., when he was injured in a fall on a barge, the SC & NO 1515, owned by respondent Sioux City and New Orleans Barge Line. At the time the barge was located at the wet dock of Avondale Marine Ways, Inc. for repairs by it.

Under the terms of a written contract between Avondale and National Corporation Service, Inc., libelant, an employee of the latter corporation, was assigned as a uniformed armed guard to work at the ship-repair plant of Avondale. In the early morning hours libelant, having been given a written receipt to be signed by the captain of the tug Point Landing No.

1, owned and operated by respondent Point Landing, Inc., for the release of Barge 1515, walked around the edge or catwalk of the barge to the tug which was then made fast to the barge and was about to move it out and away from the wet dock. Upon obtaining the receipt signed by the captain of the tug, libelant began his return to Avondale's wet dock, this time, however, walking on top of the hatch covers of the barge whose bow end was tied to the wet dock. These hatch covers were a rollaway or sliding type and were all in place and closed except the one nearest the wet dock where the cover had been left open to a width of approximately 2 feet over the No. 1 hold. Upon reaching this point libelant stepped into the open space without seeing it and fell, causing severe physical injuries. The Barge 1515 had been delivered by its owner to Avondale for repairs, the principal repair necessary being the hatch cover over hold No. 1, the one involved in the accident. The owner had been unable to close this sliding cover because it had jammed; the barge was, therefore, placed in the ship-repair yard for necessary repairs which would permit its closing.

The case is based upon a maritime tort in asserted negligence of Avondale in not providing a safe place for libelant to walk while performing his duties as a guard assigned by the National Corporation Service, Inc. to the ship-repair yard, for permitting the hatch cover to remain open and doing nothing to make it safe for libelant, and in failing to warn him of the dangers of the open hatch. Respondent Sioux City and New Orleans Barge Line, Inc. is sued because of the claimed unseaworthiness of the barge with its defective hatch cover. Respondent Point Landing, Inc. is sued on the ground that when its tug made fast to the barge, then unseaworthy, the barge

was under its custody and control at the time libelant was injured. Also because of alleged negligence in that it is contended that the tug was undermanned at the time of the accident, and had there been sufficient members of the crew present a reasonable inspection of the barge would have shown its unseaworthiness and libelant would not have been injured.

■ We see no merit in the libel against Point Landing, Inc., owners of the tug. The barge was not in tow of Point Landing's tug at the time of the accident because the barge's bow lines had not yet been cast off the dock and she was not under the control or power of the tug.[1] At the time of the accident the barge was actually in the custody of Avondale, being then tied to its wet dock. No act of negligence has been proved against this respondent, and there is no proof that had there been another member of the crew present the accident might have been avoided. We hold that respondent Point Landing, Inc. was entirely free from fault under the circumstances. There is no basis for holding it responsible, even remotely, for the accident and injury to libelant.

■ As to the owner of the barge, Sioux City and New Orleans Barge Line, Inc., the sole question to be determined is whether or not this respondent was deficient in any duty owed to libelant, a land-based worker. There is no doubt that the barge was unseaworthy; this was the reason for its being at the Avondale wet dock, that is, for the removal of the condition which caused it to become unseaworthy—the defective hatch cover which would not fully close. It would be manifestly unfair to penalize a shipowner for performing his duty in taking the necessary steps to make his ship seaworthy.[2] The determinative factors for assessing liability of an owner for unseaworthiness as we find them in the court-

1. Curd v. United States, 118 F.Supp. 921, E.D.La. (1954).

2. McDaniel v. The M/S Lisholt, 282 F.2d 816, 2 Cir. (1960), cert. den. 365 U.S. 814, 81 S.Ct. 694, 5 L.Ed.2d 692. See also West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); Filipek v. Moore-McCormack Lines, 258 F.2d 734, 2 Cir. (1958), cert. den. 359 U.S. 927, 79 S.Ct. 605, 3 L.Ed.2d 629.

made rules of admiralty law are absent here. The primary reason for libelant being aboard the barge was the performance of his duties to Avondale, which were merely of incidental or indirect benefit to the barge owner;[3] he was not in the ship's service and his work was not the type traditionally done by seamen;[4] there was no control being exercised at the time by Sioux City over the barge as it had been turned over completely to the custody of Avondale.[5] In West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959), in determining whether the shipowner exercised control where a government vessel was being overhauled and reconditioned by a contractor, despite the presence of government employees aboard, the United States Supreme Court said: "Although some of respondent's employees were on board the ship here, this would not attach liability since they gave no orders, and did not participate in the work or supervise its progress, but were simply inspectors or observers." There were no employees of Sioux City aboard the barge here. When Sioux City delivered its barge to Avondale for repairs, it was under no duty to see that the barge was lighted nor did it have any obligation to warn employees of Avondale or employees of independent contractors of Avondale about the dangerous condition of the barge created by the defective hatch cover. That duty was one which devolved exclusively on Avondale, the ship repairer. There was, therefore, no duty of seaworthiness owed by Sioux City to libelant, and we find no liability in the barge owner.

There is considerable conflict in the testimony on the issue of negligence of Avondale. But we are convinced from all of the testimony that though the wet dock was well lighted the particular place where the accident occurred due to the open No. 1 cover was in a shadow; that no warning signs or lights of any kind indicated this treacherous hazard and the failure to provide a safe place for libelant, under the circumstances, was negligence.

We do not believe the testimony that it was not among libelant's duties to walk over the barge to the tug to obtain the written receipt for the barge despite evidence that all of the guards were instructed not to walk on floating equipment. The evidence is clear that libelant was to obtain the release in whatever manner it was practical to do so. Upon his return to the wet dock, having originally negotiated his way around the catwalk which had no handrail, libelant apparently believed walking the top of the covers was the safest way to return. The tug played a spotlight on his back which threw a shadow ahead of him and apparently prevented his seeing the open hatch.

Libelant's relationship to Avondale was that of an invitee. "It is generally held that one who is on premises in the performance of his duty occupies the status of an invitee or business visitor with respect to the degree of care owed him by the owner or person in charge." 65 C.J.S. Negligence § 43(4). Generally, the degree of care owed an invitee is that of ordinary and reasonable care commensurate with particular circumstances involved, and he who breaches such duty is answerable to the invitee for damages sustained as a result thereof.[6] Reasonable care includes the duty of warning an invitee of the existence of a known dangerous condition which

---

3. McDaniel v. The M/S Lisholt, supra.

4. United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

5. Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1. See also the numerous cases reported in 84 A.L.R.2d 620 et seq.

6. Campbell v. All State Insurance Company, 112 So.2d 143, La.App., 1 Cir. (1959).

might imperil his safety.[7] Avondale had actual knowledge of the defective condition of the barge and its failure to so warn libelant, who was performing the business of Avondale at the time, constitutes actionable negligence.

■ Nevertheless, we believe that had libelant looked carefully he would have seen the open, dangerous condition of the hatch and might have averted the accident. The accidental injury occurred, therefore, through the concurrent negligence of two proximate causes, the one being that of Avondale in failing to provide a safe place for libelant to perform his duties, in not giving warning of the dangerous condition, and in its failure to close the hatch cover; the second in libelant's failure to keep an alert lookout as he walked and in stepping into the open hatch as he did. The evidence shows that an employee of Avondale erroneously called for moving of the barge by the Point Landing tug at the time of the accident. The barge was not to be removed until the work was completed and the hatch cover repaired and closed. But through a misunderstanding one of Avondale's employees called Point Landing for removal of the barge apparently believing the repairs had been completed. The evidence shows that the barge was returned several days later and the towing charges for taking the barge away and returning it were paid by Avondale because of its error. Since the accident occurred through the concurrent and equal negligence of Avondale and libelant, libelant is guilty of contributory negligence to the extent of 50 per cent. The maritime doctrine of comparative negligence is applicable here and will be so applied. Cenac Towing Co. v. Richmond, 265 F.2d 466, 5 Cir. (1959).

■ Libelant received severe injuries as a result of his fall. He was immediately taken to the hospital where a splenectomy and exteriorization of the cecum was performed on June 4, 1958. There-after, on June 20, a resection of the terminal ileum and proximal half of the right colon was performed, with end-to-end anastomosis to replace the previously exteriorized cecum. A Meckel's diverticulum was also resected. Post-operative bleeding immediately set in which required a third operation during which time libelant had a cardiac arrest which lasted for 2 minutes and 40 seconds before his heartbeat was restored. Cerebral anoxia followed which resulted in cerebral atrophy with a moderate mental defect, a slight speech defect and periarticular pains. Libelant was in the hospital in numerous operations for more than seventy days, his condition was critical and he was not expected to live. He received numerous fractures of the ribs and lacerations as well. There is no doubt that he was most severely injured. Under the circumstances, in view of his 50 per cent contributory negligence, we believe a fair award, after reducing it for his negligence, is the sum of $25,000.

Judgment will be entered accordingly.

---

7. Mahfouz v. United Brotherhood of Carpenters, etc., 117 So.2d 295, La.App., 2 Cir. (1959).