**Robert E. OLSEN, Stanley A. Olsen, and Roberta A. Uglem, personal representative of the Estate of Allen D. Uglem, Deceased, Plaintiffs,**

v.

**TODD SHIPYARDS CORPORATION, Defendant.**

**No. C75–121A.**

United States District Court, W. D. Washington.

June 29, 1977.

David Danielson, Lane, Powell, Moss & Miller, Seattle, Wash., for plaintiffs.

Theodore A. Le Gros, Howard, Le Gros, Buchanan & Paul, Seattle, Wash., for defendant.

OPINION

BEEKS, Senior District Judge.

The critical issue for determination herein is whether defendant Todd Shipyards Corporation ("Todd") occupied the position of owner pro hac vice with respect to Foss Barge No. 202 ("202") on March 9, 1972 when three of its employees working aboard that barge were asphyxiated, one fatally. If so, plaintiffs can maintain this action notwithstanding the provisions of former 33 U.S.C. § 905,[1] Longshoremen's

---

1. 33 U.S.C. § 905, prior to its amendment on October 27, 1972, provided:

The liability of an employer prescribed in section 904 of this title shall be exclusive and

and Harbor Workers' Compensation Act ("LHWCA"), which generally forbids such actions by shoreside maritime workers against their employers. If not, plaintiffs' action is precluded by the statute and pre-empted by LHWCA. Todd's true status will appear upon review of the facts and analysis of the applicable law.

Foss Launch & Tug Company ("Foss"), owner of 202, delivered 202 to Todd's floating drydock on March 9, 1972 for routine service, the annual inspection required by law and such repairs as were indicated by the inspection (subject to Foss's later authorization). Foss had already issued to Todd a "purchase requisition" on or about March 7, 1972 which described the work to be done as follows:

> Drydock vessel for inspection by ABS and U.S.C.G.
>
> Open all tanks and compts for internal exam. Provide "safe for men" certificate. Provide temp lights. Close up upon completion of inspection. Clean and Paint bottom as directed (owner furnished paint). Accomplish repairs as authorized by owner's representative.

Todd completed the requested work and restored 202 to Foss on March 10, 1972.

Plaintiff Robert Olsen, plaintiff Stanley Olsen and Allen Uglem (now deceased and whose personal representative is a nominal plaintiff herein) were Todd employees at the time in question—pipefitters by trade— who together comprised a three-man work crew assigned to 202 to inspect her flotation tanks and pump them if required. In undertaking this assignment they were under the exclusive direction of Todd.

On the evening of March 9, 1972, 202 was out of the water on blocks in Todd's dry-dock. At approximately 7:45 p. m. Stanley Olsen, in the course of his aforementioned inspection duties, entered tank A421f and collapsed due to its oxygen-deficient atmosphere. Robert Olsen and Allen Uglem, who had been working nearby, then entered the tank to effect a rescue. They too collapsed. Allen Uglem did not recover; Robert and Stanley Olsen did, but allegedly suffered injuries during the experience. It is in respect of such death and injuries that this action against Todd was filed as was an earlier separate action against Foss which was dismissed by this Court, such dismissal having now been upheld on appeal.[2] A brief reflection upon findings and conclusions made in the earlier case ("Foss Case") will be an aid in understanding the posture of the instant case.

In the Foss Case the same plaintiffs as are here before the Court sued Foss to recover their respective damages on the theory that Foss owed them the traditional warranty of seaworthiness in respect of 202, which warranty was breached insofar as the atmosphere in tank A421f was unsafe for Todd workmen. After trial, this Court held that Foss had made no warranty respecting the condition of the tank and accordingly denied recovery. The basis of the ruling was that the work order (quoted earlier herein) pursuant to which Todd took possession of 202 effectively disclaimed such warranty. It was Todd's express responsibility to open all tanks aboard 202 for internal inspection and certify them "safe for men." The inescapable implication of the Foss work order was that unsafe conditions may indeed prevail in certain tanks which Todd was to eliminate prior to providing the re-

in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.

2. *Uglem v. Foss Launch & Tug Co.*, Cause No. 709–72C2, 566–73C2 and C74–1765 (W.D. Wash.1974), *aff'd*, 541 F.2d 1378 (9th Cir. 1976).

quested certification. Therefore, Foss clearly did not warrant the safety of the tanks to Todd's workmen.

In affirming this Court's decision in the Foss Case, the Court of Appeals placed reliance on a United States Supreme Court case, *West v. United States*,[3] and a Second Circuit case, *McDaniel v. the M/S LISH-OLT*,[4] citing the latter in particular for the proposition that

> there is no warranty that a vessel is seaworthy with respect to the unseaworthy condition which is directly responsible for bringing aboard the persons claiming the benefit of the warranty.[5]

The Appellate Court bolstered its decision to affirm by emphasizing that Foss "had absolutely no control of the vessel" when the casualties occurred. Thus, plaintiffs were unsuccessful in their attempt to fasten liability upon Foss. Undaunted, plaintiffs filed this action in the belief that their remedy must lie instead against their employer, Todd.

Notwithstanding the unqualified pronouncement of former 33 U.S.C. § 905[6] that an employer's liability for work-related injuries sustained by a covered employee would consist exclusively of the prescribed LHWCA compensation, such legislation has been authoritatively construed to present no bar to an independent action at law by such employee to recover actual damages from his employer in those cases where the latter is the owner or owner pro hac vice of the vessel involved.[7] Liability will be imposed in such independent action upon it

being established that the vessel's unseaworthy condition proximately caused the injury and that, as aforesaid, the employer was at the time the vessel's owner or standing in the owner's shoes. Thus the threshold question herein, previewed earlier, is whether Todd, while obviously not the owner of 202, was its owner pro hac vice when the casualties occurred.

Counsel herein cite many relevant cases and propose various formulae to aid in determining Todd's status. Upon review of the cited cases and others, the Court finds most definitive the following description set forth in *Guzman v. Pichirilo*,[8] there referring specifically to a demise charter but no less applicable, in this Court's view, to the creation of ownership pro hac vice generally:

> To create a demise the owner of the vessel must completely and exclusively relinquish "possession, command and navigation" thereof to the demisee. [citations omitted] It is therefore tantamount to, though just short of, an outright transfer of ownership. However, anything short of such a complete transfer is a time or voyage charter party or not a charter party at all.[9]

Additionally and significantly, the *Guzman* Court reaffirmed a time-honored judicial approach to such arrangements in stating that "courts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relationship."[10] Applying the standard and adopting the judicial philosophy of *Guzman*, the evidence

---

3. 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959).

4. 282 F.2d 816 (2d Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 694, 5 L.Ed.2d 692 (1961).

5. *Uglem v. Foss Launch & Tug Co.,* 541 F.2d 1378, 1380–81 (9th Cir. 1976); *see Grigsby v. Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011, 1031 n. 37 (5th Cir. 1969).

6. *See* note 1, *supra*.

7. *Reed v. The Yaka*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); *Jackson v. Lykes Brothers*, 386 U.S. 731, 87 S.Ct. 1419, 18

L.Ed.2d 488 (1967); *Eskine v. United Barge Company*, 484 F.2d 1194 (5th Cir. 1973); *Blair v. United States Steel Corporation*, 312 F.Supp. 293 (W.D.Pa.1970), *aff'd*, 444 F.2d 1390 (3d Cir. 1971).

8. 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962).

9. *Id.* at 699–700, 82 S.Ct. at 1096.

10. 369 U.S. 698, 700, 82 S.Ct. at 1097 (1962), citing with approval, *Reed v. United States*, 78 U.S. (11 Wall.) 591, 20 L.Ed. 220 (1871).

relevant to Todd's status can be properly weighed.

202 was being serviced by Todd employees in Todd's drydock utilizing Todd's lights to illuminate the work area when the casualties occurred. She held no cargo and was attended by no Foss personnel. Todd had the liberty to adopt whatever procedures it deemed necessary or convenient to accomplish the tasks described in the Foss work order. Hence the observation of the Court of Appeals in the Foss Case that, under the circumstances, Foss had "absolutely no control over the vessel" so as to subject it to the contended liability. This observation simply reflected the fact that Foss lacked all *immediate, proximate* control of 202 and those aboard her at the critical time. Foss had, it reasonably appears, completely relinquished its possession of 202 for the repair period. However, the inquiry does not end there. It remains to consider whether Foss had additionally effected a complete and exclusive relinquishment to Todd of the command and navigation of 202.

It would no doubt prove a perplexing judicial task in a close case to fix the precise point at which a vessel owner has surrendered complete command and naviga-

tional control of his vessel.[11] The case at bar requires much less precision. A true owner pro hac vice has complete—though perhaps only temporary—dominion over the vessel entrusted to him. He commands her navigation [12] and is entitled to avail himself fully of her services. Foss invested no such powers in Todd, and Todd required no such powers to carry out its contractual obligations. Todd's rightful dominion over 202 was confined to a very narrow sphere. As between Foss and Todd, Foss retained the far greater proportion of the incidents of ownership—particularly those associated with the command, navigation and operation [13] of 202. During its brief custody of 202 Todd could not, except in derogation of Foss's ownership rights, engage 202 in any commercial enterprises or navigational adventures. Todd acquired no right to utilize 202 in cargo operations or any other service normally within an owner's prerogative—save such as would relate to the requested work.[14]

Todd's relationship to 202 was simply that of a bailee to bailed property. Todd was given temporary custody of 202 for a specific and limited purpose. It no more stood in the shoes of Foss while it had

---

11. That is, of course, unless a formal demise has been executed or there is other indisputable evidence of the parties' relationship.

12. The parties have stipulated that 202 was "in navigation" at all times relevant herein. This should not be taken to mean that she was literally navigating while in drydock, an absurdity, but rather that 202 had not been withdrawn from navigation and had not ceased to be an instrument in maritime commerce during her short residence with Todd. The annual inspection she was undergoing would enable her to remain in navigation. *See, e. g., Griffith v. Wheeling Pittsburg Steel Corporation,* 521 F.2d 31, 37 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

13. At least one court addressing this issue has stated that, in addition to custody, a true owner *pro hac vice* must acquire the navigational and "operational" control of the vessel. *Blair v. United States Steel Corporation,* 312 F.Supp. 293, 299–300 (W.D.Pa.1970), *aff'd,* 444 F.2d 1390 (3d Cir. 1971). While the word "operational" is not found in the *Guzman* definition (of demisee) adopted herein, such term is en-

tirely consistent with that definition and helpful in differentiating between an ordinary bailee and an owner pro hac vice.

14. Cases cited prominently by plaintiffs in support of their contention that Todd was owner pro hac vice of 202 are readily distinguishable on their facts from the case at bar. In each such case where ownership pro hac vice was found, the party so designated had been invested by the vessel owner with far greater incidents of ownership than here. *See Griffith v. Wheeling Pittsburg Steel Corporation,* 521 F.2d 31 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976) [barge incorporated into owner pro hac vice's coal fleet and put to commercial use]; *Blair v. United States Steel Corporation,* 312 F.Supp. 293 (W.D.Pa.1970), *aff'd,* 444 F.2d 1390 (3d Cir. 1971) [barge used commercially by owner pro hac vice to transport pipe]; *Eskine v. United Barge Company,* 484 F.2d 1194 (5th Cir. 1973) [barge used commercially by owner pro hac vice to transport salt].

charge of 202 than does a jeweler stand in the shoes of the watch owner when he receives a watch to repair. Very few of the normal incidents of ownership are transferred in either situation.[15] As an ordinary bailee and no more, Todd has a complete defense to this action under LHWCA which, as earlier stated, limits an employer's liability to the compensation prescribed by statute.[16]

Viewing this decision in conjunction with the Foss Case one cannot but lament the plight of these plaintiffs whose actual damages must be greatly in excess of the LHWCA allowances. Still, that is the statutory scheme which Congress has seen fit to enact, however lamentable it may be.[17]

Accordingly, plaintiffs' causes of action against Todd are dismissed, and the Clerk is directed to enter judgment of dismissal with prejudice and with costs in favor of Todd.

---

**15.** Further evidence that Todd did not acquire the broad powers normally associated with an owner pro hac vice is seen in the fact that Foss tugs were generally employed by Todd to move Foss vessels being repaired by Todd and the fact that Foss representatives, though not aboard 202 when the casualties occurred, would quite regularly visit the work site to evaluate work done on Foss vessels and to authorize additional repairs when necessary. These circumstances reinforce the Court's conclusion herein that Todd was not an owner pro hac vice of 202, but, because they are admittedly subject to different interpretations, are not essential to that conclusion.

**16.** It has not been claimed that Todd has in any way failed to discharge its statutory obligations owed to plaintiffs.

**17.** As a postscript I note that to date the Courts of Admiralty have not yet satisfactorily resolved the question of when, if ever, *in rem* liability for unseaworthiness can attach to a vessel in the absence of an underlying *in personam* liability. *Compare Reed v. The Yaka,* 307 F.2d 203, 206 (3d Cir. 1962), *rev'd on other grounds,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963); *and Pichirilo v. Guzman,* 290 F.2d 812, 815 (1st Cir. 1961), *rev'd on other grounds,* 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962), *with Grillea v. United States,* 232 F.2d 919, 924 (2d Cir. 1956). That precise issue, however, was not posed herein.