**Larry D. AMOX, Plaintiff,**

v.

**BARGE # ATB 99, and Crowley Maritime Corporation and Sea/Land Freight Service, Inc., Defendants.**

**No. A83–001 CIV.**

United States District Court,
D. Alaska.

June 28, 1984.

---

Richard J. Ray, Kodiak, Alaska, for plaintiff.

Michael A. Barcott, Faulkner, Banfield, Doogan & Holmes, and William Wuestenfeld, Bradbury Bliss & Riordan, Anchorage, Alaska, for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on defendant Sea-Land Freight Service, Inc.'s (Sea-Land) motion for summary judgment. This court has jurisdiction pursuant to 28 U.S.C. § 1333(1) and 33 U.S.C. § 905(b).

Plaintiff's request for oral argument was untimely and furthermore is denied under the local rule in order to expedite the business of the court.

### I. Plaintiff's Claim

Plaintiff alleges that the barge ATB 99[1] was owned by defendant Crowley Maritime Corporation (Crowley) and was under charter to Sea-Land. Further, plaintiff claims that the defendant vessel did not have a gangplank or other method for safe entry and exit; that the failure to equip the vessel with a gangplank is "prima facie" negligence and that such negligence was the proximate cause of plaintiff's injuries.

### II. Motion for Summary Judgment

Summary judgment may be granted if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the non-moving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. *International Ladies Garment Workers Union v. Sureck*, 681 F.2d 624, 629 (9th Cir.1982). The moving party has the burden of showing that no genuine issue of material fact exists. *Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1381 (9th Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

### III. Undisputed Facts

The following few facts are undisputed: Plaintiff, Larry Amox, was employed by defendant Sea-Land as a longshoreman. Amox was injured while engaged in loading and unloading the defendant barge ATB

---

1. The identification of the barge given in documents before the court is barge ATB 99. That identification is employed here and the caption corrected accordingly.

99. Plaintiff has received compensation for his injuries from the employer pursuant to the Longshoremen and Harbor Workers Compensation Act, 33 U.S.C. §§ 901–950 (1982).

Pursuant to the terms of a joint venture agreement (defendants' Ex. A) the barge ATB 99 was provided by Arctic Lighterage Co. Arctic Lighterage Co. is a subsidiary of defendant Crowley Maritime Co. Plaintiff alleges that Crowley is the owner of the barge. Plaintiff's complaint, ¶ 2. The joint venture agreement, ¶ 4, provided:

Once every week Arctic Lighterage will verbally provide to a designated Sea-Land employee a detail of all barge activity planned for in the way of a barge itinerary specifying origins and customers to be served for the coming week. Arctic Lighterage will provide to a designated Sea-Land employee verbal notice 48 hours in advance of its arrival at Sea-Land facilities and should that arrival be delayed for any reason from said notification, Arctic Lighterage shall advise as soon as possible a corrected estimated time of arrival, but in no event less than 12 hours prior to arrival.

Paragraph 7 provided:

7. Arctic Lighterage will exercise due diligence to assure that tugs are adequate and masters are qualified to navigate in the Bristol Bay area so as to negate their meeting at a rendezvous point for the purpose of switching tugs or masters, resulting in an adverse impact on the schedule.

Paragraph 8 provided:

8. Sea-Land will be responsible for spotting to load, loading and discharging containers for the barges at its facilities in Seattle, Washington and Kodiak City and Anchorage, Alaska. Sea-Land will also be responsible for spotting to load containers at Dutch Harbor.

### IV. Discussion

a. Must an employer be the owner *pro hac vice* to be liable under § 905(b).

Defendant Sea-Land moves for summary judgment on the grounds that the plaintiff's exclusive remedy against it is found in § 4 of the LHWCA, 33 U.S.C. § 904. *See* 33 U.S.C. § 905(a) (exclusivity of 904 no-fault compensation remedy).

33 U.S.C. § 905(b) preserves an injured person's cause of action for negligence against a vessel. In *Jones and Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 2547, 76 L.Ed.2d 768 (1983) the United States Supreme Court held that a separate negligence action is authorized against the employer *qua* vessel when the employer is also the owner *pro hac vice*.

In order to determine whether genuine issues of material fact have been established regarding Sea-Land's status vis-a-vis the vessel the court must first determine as a matter of law whether an employer's liability *qua* vessel may be predicated on a relationship to the vessel in which the employer, although not a bareboat charterer or owner *pro hac vice*, nevertheless exercises some control over the vessel.

A literal application of the definition of vessel in § 902(21) to the unseaworthiness/negligence remedy against the vessel in 905(b) yields a short and affirmative answer. A vessel is defined as "the term 'vessel' ... and said vessel's owner, owner *pro hac vice*, agent, operator, charter or bareboat charterer, master, officer or crewmember."

Despite the expansive definition of vessel set out above, the district court in *Keller v. United States*, 557 F.Supp. 1218, 1225 (D.N.H.1983) concluded that an employer must be shown to be the demise charterer "hence owner *pro hac vice*," to incur liability as a vessel. The court's conclusion, however, was based on the proposition that Congress precluded voyage and time charterers *from liability* as a vessel by the use of the phrase "charter or bareboat charterer." The case cited in support of this proposition, *Meredith v. A & P Boat Rentals, Inc.*, 414 F.Supp. 788 (E.D.La.1976) was, in this court's view, misread by the court in *Keller* and, in fact, offers no support for the proposition. In *Meredith*, the court concluded that "[b]y use of the phrase 'charter [sic] or bareboat charterer,' Congress obviously intended to preclude time

charterer *from seeking indemnity."* The time charterer, to the *Meredith* court, was within the definition of vessel in 902(21) and thereby precluded, like the vessel, from seeking indemnity from the employer by the anti-indemnity clause in the first sentence of § 905(b). Consequently, although this court, as shown below, agrees with its result, *Keller* lacks precedential value to support the conclusion that an employer's status must be that of an owner *pro hac vice* to incur liability *qua* vessel.

Support for this proposition, however, does appear from the fact that courts in cases before and after the 1972 LHWCA amendments adding § 905(b) have invariably decided the question of employer's liability *qua* vessel after applying the analysis for ownership *pro hac vice.* In cases in which the employer has been held to answer as the vessel, the employer has been found to be an owner *pro hac vice.* Cf. *Jones & Laughlin Steel Corp. v. Pfeifer,* 103 S.Ct. at 2544 ("As the owner *pro hac vice* of the barge, petitioner [employer] may also be liable for negligence ..."): *Jackson v. Lykes Brothers Steamship Co.,* 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967); *Reed v. The Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963) (employer operated vessel under bareboat charter); *Griffith v. Wheeling-Pittsburgh Steel Corp.,* 610 F.2d 116, 127–28 (3rd Cir.1979), *vacated,* 451 U.S. 965, 101 S.Ct. 2038, 68 L.Ed.2d 343 (1981) *reinstated,* 657 F.2d 25 (3rd Cir.1981) (barge incorporated into employer's own fleet and in possession of employer's river foreman); *Smith v. M/V Captain Fred,* 546 F.2d 119, 122 (5th Cir. 1977) (repairman injured on employer-owned vessel); *Napoli v. Hellenic Lines,* 536 F.2d 505, 506 (2nd Cir.1976) (*pro hac vice* owner acting as its own stevedore); *Eskine v. United Barge Co.,* 484 F.2d 1194, 1196 (5th Cir.1973) (employer, in moving barge to and from loading dock, exercised complete and exclusive control).

■ Similarly, in cases where an employer has been relieved as a matter of law from liability under § 905(b), that result has been expressed as a failure to establish that the employer's status was that of an owner *pro hac vice. Cf. The DuCote v.*

*International Operating Co. of La., Inc.,* 678 F.2d 543 (5th Cir.1982) (cargo terminal company which took possession of barge for cleaning not owner *pro hac vice); Bossard v. Port Allen Marine Services, Inc.,* 624 F.2d 671 (5th Cir.1980) (ship repairer lacked sufficiently complete control to be owner *pro hac vice); Hess v. Port Allen Marine Services, Inc.,* 624 F.2d 673 (5th Cir.1980) (companion case, employer's movement of barge incidental to contract for de-gasing); *Olsen v. Todd Shipyards Corp.,* 435 F.Supp. 568 (W.D.Wash.1977) (ownership *pro hac vice* is threshold question); *Keller v. United States,* 557 F.Supp. 1218, 1223–29 (D.N.H.1983) (performance of tasks incidental to loading do not transform stevedore into owner *pro hac vice); Ardoin v. Talen's Landing,* 1982 AMC 2633 (W.D.La.1980) (§ 905(b) liability when vessel and employer are one and the same). Although, with the exception of *Keller,* discussed above, none of these later cases wrestles with the expansive definition of vessel in § 902(21), it is apparent from a review of the facts presented in each case that the employer had assumed a measure of responsibility for the operation of the vessel. *See DuCote,* 678 F.2d at 545 (defendant vessel taken by employer's tug to employer's terminal); *Bossard* and *Hess* 624 F.2d at 672, 673 (contractor in possession of barge); *Olsen,* 435 F.Supp. at 571 (temporary custody in floating drydock). Accordingly, the court here holds expressly that which has previously been consistently and implicitly assumed: Where the relationship of the employer to the vessel is such that the employer's status is that of an owner *pro hac vice,* the employer may be liable *qua* vessel; where, however, the employer, although having custody of the vessel as, for example a bailee or time charterer, is not, under the circumstances, the owner *pro hac vice,* liability under § 905(b) does not attach.

This court's holding does not disturb the rationale underlying *Reed v. Yaka* and *Jones & Laughlin.* An injured longshoreman whose employer is a time charterer or bailee of the vessel may, like the employee of an independent stevedore, look to the

vessel's owner to supplement his compensation. To the contrary, a literal application of the definition of vessel to 905(b) forces the employer-owner exception to 905(a) exclusivity to become the rule which undermines exclusivity. While it is now settled that Congress intended to preserve the *Yaka* remedy for owner-employed longshoremen, there is no evidence that Congress intended to use an expansive definition of vessel to nullify its efforts to strike a balance between shipowners, stevedores and longshoremen.

b. Was Sea-Land an owner *pro hac vice*

■ The following facts, among others, have been found material to a determination of whether party is an owner *pro hac vice*: whether the charterer had the right to use the vessel for its own purposes. *DuCote*, 678 F.2d at 545; whether the charterer assumed responsibility for the command, navigation and operation of the vessel, *Olsen v. Todd*, 425 F.Supp. at 571.

■ The joint venture agreement introduced by defendant establishes that the tugs used to provide motive power for the barge were furnished for *initial northbound cargo* movement by Arctic Lighterage. It has not been established in the record, however, when and whether the barge was powered to the dock where plaintiff was injured. The agreement also indicates that Arctic Lighterage would be responsible for advising Sea-Land of all barge activity and give verbal notice 48 hours in advance of arrival at Sea-Land facilities. Sea-Land argues from this clause that the court should acknowledge the non-existence of fact questions regarding Sea-Land's right to determine the destination of the barge. The inference most favorable to the non-moving party, however, is simply that once a decision as to a barge's destination was made, Arctic Lighterage was responsible to inform the shore-side Sea-Land stevedore. The contract, however, does not preclude Sea-Land as a joint venturer from making that determination.

Furthermore, there is no indication of what movement of the barge occurred at dockside, or how long the barge had been at dockside, whose master and tug brought the barge to which of Sea-Land's docking facilities. The court acknowledges that, ordinarily, the relationship of stevedore to shipowner is different from that of bareboat charterer to shipowner. *Rao v. Hillman Barge & Construction Company*, 467 F.2d 1276 (3rd Cir.1976) *citing Miller v. Union Barge Line Corp.*, 299 F.Supp. 718, 720 (W.D.Pa.1969). The evidence submitted by Sea-Land, however, does not unequivocally establish so simple a relationship between Sea-Land and Arctic Lighterage.

V. Conclusion

The court's conclusion that Sea-Land has failed to establish the non-existence of material facts does not imply that the employer's status cannot be resolved by summary judgment, but only that the facts now before the court are too sparse to accomplish that result.

Accordingly, IT IS ORDERED:

THAT defendant Sea-Land's motion for summary judgment is denied.